**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

DIANA RING, *et al.,* individually and on behalf of all others similarly situated,

Plaintiff,

v.

PINNACLE HOLDINGS, LTD.,

Defendant.

**Case No.: 1:26-cv-01090-CNS-TPO**

**DEFENDANT'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1) AND (b)(6)**

Defendant Pinnacle Holdings, LTD., ("Pinnacle") moves to dismiss Plaintiffs' Consolidated Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). In support of its Motion to Dismiss, Pinnacle states as follows:

## I. INTRODUCTION

On November 25, 2024, Pinnacle experienced a network disruption that impacted its systems (the "Incident"). Pinnacle immediately took steps to secure its systems and engaged cybersecurity experts to investigate. That investigation revealed cybercriminals may have gained unauthorized access to Pinnacle's systems from November 11-25, 2024. Pinnacle issued notices of the Incident to the potentially impacted individuals, including several of the Plaintiffs.

Plaintiffs Ring, Butsch, Williams, Johnson, Forbes, and Gonzales ("Plaintiffs") filed individual lawsuits asserting various claims arising out of the Incident. On May 26, 2026, the cases were consolidated into the instant action, and on July 10, 2026, Plaintiffs filed their Consolidated Class Action Complaint, asserting the following claims: (1) negligence, (2) negligence *per se*, (3) breach of third-party beneficiary contract, (4) unjust enrichment, and (5) declaratory judgment.

Importantly, Plaintiffs allege they provided personal information to unidentified healthcare providers who, in turn, shared it with Pinnacle. (ECF No. 24 ¶¶ 3, 30). Yet they have neither identified nor sued those providers and ***have not alleged they had any relationship with Pinnacle*** giving rise to a duty. Moreover, none of the Plaintiffs allege they suffered a concrete injury stemming from the Incident. Instead, they contend they may suffer future harm, spent time and money mitigating potential future harm, received spam communications, and that their information has diminished in value. Courts within the Tenth Circuit have consistently rejected these conjectural theories of harm, deeming them insufficient to establish an injury for Article III standing purposes, or compensable damages under any common law cause of action. Thus, Pinnacle respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety for lack standing under Rule 12(b)(1) and, independently, failure to plead facts establishing the essential elements of their claims (to include their failure to allege damages) under Rule 12(b)(6).

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1), Lack of Subject Matter Jurisdiction.

Article III standing is a threshold question of subject matter jurisdiction, which courts consider pursuant to Rule 12(b)(1). *Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021). "'[S]tanding is a prerequisite for all actions, including class actions.'" *Big Elk v. Board of County Comm'rs of Osage County*, 3 Fed. Appx. 802, 807 (10th Cir. 2001) (internal quotation omitted). Therefore, class representatives must establish they have individual standing to sue. *Warth v. Seldin*, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ("plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.").

At the pleading stage, the plaintiff bears the burden to "allege facts demonstrating each element" of standing, including, "(1) [] an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

### B. **Fed. R. Civ. P. 12(b)(6), Failure to State a Claim.**

A court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, "a plaintiff may not rely on mere labels or conclusions, 'and a formulaic recitation of the elements of a cause of action will not do.'" *Wood v. La. Plata Cty. Det. Facility*, Civil Action No. 25-cv-3315-STV, 2026 LX 279855, at *3 (D. Colo. May 29, 2026)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Rather, the Court must "determine whether the Complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III. ARGUMENT

### A. **Plaintiff Ring Has Wholly Failed to Allege *Any* Allegations in Support of Her Claims, and the Same Should be Dismissed Pursuant to FRCP 12(b)(1) and 12(b)(6).**

While Plaintiff Ring is listed in the case caption, her name appears nowhere else in the Complaint and the Complaint itself is completely devoid of any allegations regarding her personal experience, purported injury/harm, her relationship with Pinnacle, or even establishing that her information was involved in the alleged data breach. Absent *any* allegations regarding who Ring is or how she was harmed, she has wholly failed to put Pinnacle or this Court on notice of the facts

supporting her claims, or whether she has standing to bring this action. Thus, Defendant respectfully requests that this Court dismiss Plaintiff Ring's claims for lack of standing and failure to state a claim under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**B. Each of the Named Plaintiffs Lack Standing to Bring This Action, and the Same Should be Dismissed Pursuant to FRCP 12(b)(1).**

As this Court has acknowledged, "'Data breach cases present unique Article III standing questions,' resulting in circuit splits 'as to whether the existence of a data breach, alone, is sufficient to constitute an injury in fact.'" *Am. Data Serv.*, 2026 LX 199766, at *6–7. (quoting *Jenkins.,* 2025 WL 708574, at *3). In the absence of guidance from the Tenth Circuit, however, Courts within the Circuit – including this District – have determined, the mere occurrence of a data breach is insufficient to establish standing. *Id.* Courts have also rejected the hypothetical theories of harm commonly alleged in data breach actions, and which Plaintiffs have alleged here. These include, (1) the receipt of spam communications following a breach, (2) the alleged 'lost value' of personal information, (3) the risk of future harm, and the time/expenses incurred in efforts to mitigate such potential harm, (4) general loss of privacy, and (5) lost benefit of the bargain. Accordingly, Plaintiffs lack standing to pursue their claims based on these alleged injuries which have been expressly rejected by this and other Courts within the Tenth Circuit.

1. Plaintiffs' Receipt of Spam Communications Does Not Constitute an Injury-in-Fact.

"[A]llegations of increased spam communications, such as calls and emails, after an alleged data breach do not constitute an injury in fact." *Henderson.*, 2024 LX 94044, at *17; *Jenkins.,* 2025 LX 120516, at *13; *Blood v. Labette Cty. Med. Ctr.*, No. 5:22-cv-04036-HLT-KGG, 2022 U.S. Dist. LEXIS 191922, at *15 (D. Kan. Oct. 20, 2022) ("alleged inconvenient disruptions (such as spam calls, texts, and emails) do not constitute an injury in fact."); *McCombs v. Delta*

*Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023) ("Spam calls, texts, and e-mails have become very common in this digitized world, and a number of courts have declined to confer standing when considering an increase in spam communications."). Moreover, Plaintiffs all allege that they experienced a "significant increase" in spam communications. Thus, "[a]s they were already receiving such communications it is impossible to say that the breach played any role in increasing the amount of spam Plaintiffs were already receiving." *Id*., at 18.

a. Plaintiffs' Alleged Loss in Value of Their PII/PHI Does Not Constitute an Injury-in-Fact.

Plaintiffs contend the value of their private information has diminished as a result of the Incident. However, they have not alleged what value the PII/PHI provides to the Plaintiffs themselves. Instead, they repeatedly refer to the black-market value of their PII/PHI to unidentified, hypothetical cybercriminals who could possibly sell their information. For example, Plaintiffs allege, "PHI/PII is a valuable commodity for which a 'cyber black market' exists," and "medical data sells for $50 and up on the Dark Web." (ECF No. 24. ¶¶ 141, 143). However, Plaintiffs allege no facts establishing how a loss in the purported black-market value of their information is a loss that the *plaintiffs* suffered. In other words, unless Plaintiffs planned to sell their own information on the dark web, any reduction in the "going rate" of their information is of no consequence to them. District Courts within the Tenth Circuit have consistently come to the same conclusion, reasoning:

> the Court is not convinced PHI/PII has independent monetary value. Even assuming it does, Plaintiffs' conclusory allegations do not plausibly show how they suffered a concrete injury through any loss in value—such as through an inability to sell their personal information or a lower price offered in such a sale. As there is no actual damage to Plaintiffs due to the alleged loss in value in their personal information, this is not an injury in fact sufficient to confer standing.

*Henderson.*, 2024 LX 94044, at *18-19; *Maser v. Commonspirit Health*, Civil Action No. 1:23-cv-01073-RM-SBP, 2024 U.S. Dist. LEXIS 102196, at *22 (D. Colo. Apr. 16, 2024) (diminution in the black-market value of plaintiff's PII was not a concrete injury, as plaintiff, "does not allege that she could or would have sold her PHI or PII if Defendant had not been hacked.").

Similarly, District Courts in the Tenth Circuit have rejected the notion that the alleged "loss of privacy" stemming from a data breach is a sufficiently concrete injury to establish standing. *Maser.*, 2024 U.S. Dist. LEXIS 102196, at *23 (rejecting plaintiff's argument "that her 'loss of privacy' in itself supports standing," finding she "does not allege any actual injury."); *Jenkins*, 2025 LX 120516, at *35 ("Plaintiff's loss of privacy injury—even if actual and imminent—isn't concrete and thus doesn't suffice as an injury in fact.").

b. Plaintiffs' Emotional Distress and Mitigation Efforts do not Constitute an Injury-in-Fact.

Plaintiffs next allege they suffered emotional distress and lost time and money spent mitigating their alleged risk of future harm. These allegations, likewise, fail to establish a concrete injury. As stated by this Court in *Henderson v. Reventics LLC,* "the conclusory allegations Plaintiffs have experienced various forms of emotional distress do not plead an injury in fact." 2024 LX 94044, at *20. Further, "Plaintiffs' mitigation costs to proactively monitor their credit accounts is not an injury in fact that confers standing." *Id.* at *16. This is consistent with rulings issued by other courts within the Tenth Circuit. *See, e.g., Masterson v. IMA Fin. Grp., Inc.*, No. 2:23-cv-02223-HLT-ADM, 2023 U.S. Dist. LEXIS 222701, at *16-17 (D. Kan. Dec. 14, 2023) ("Actions taken based on a hypothetical future threat does not create a concrete injury," and "Plaintiffs' bare-bones allegations of emotional distress are not sufficient to confer standing."); *Jenkins,* 2025 LX 120516, at *29 ("The court's conclusion—that plaintiff hadn't alleged a future risk of identity theft—thus dooms plaintiff's emotional distress and mitigation injuries.").

c. Plaintiffs' Alleged Lost Benefit of the Bargain Does Not Constitute an Injury-in-Fact.

Plaintiffs also claim they suffered a "loss of benefit of the bargain" due to Pinnacle not adequately protecting their Private Information. (ECF No. 24., ¶ 172). However, Plaintiffs do not allege they issued payment, entered into any bargained-for-exchange with, or even interacted with Pinnacle. Instead, they engaged in transactions with Pinnacle's clients who then presumably provided their information to Pinnacle. (*Id*., ¶ 30.). This Court has rejected this very theory of harm under these very circumstances. In *Henderson v. Reventics LLC,* the plaintiffs allegedly, "provided their PHI/PII to medical providers who then provided this information to Defendants," before a cyberattack on the defendants' system. 2024 LX 94044, at *16. Plaintiffs then alleged they suffered an injury in the form of "lost benefit of the bargain." *Id.* However, the Court determined:

> These conclusory allegations do not confer standing…[as] it is unclear to what alleged bargain Plaintiffs are referring….Plaintiffs provided their PHI/PII to medical providers who then provided this information to Defendants. Plaintiffs do not allege a contractual relationship with Defendants or otherwise elaborate on what is the purported bargain. Second, Plaintiffs fail to explain what is the alleged benefit of that bargain, let alone how the data breach caused them to lose that benefit.

*Id.* Accordingly, because Plaintiffs entered into no transactions with Pinnacle, they cannot plausibly allege they lost the benefit of a bargain they never entered into.

**C. <u>Plaintiffs Have Failed to Allege They Experienced Any Fraud /Attempted Fraud That is Fairly Traceable to Pinnacle's Conduct.</u>**

In addition to the conjectural theories of harm discussed above, Plaintiffs Butsch, Williams, Johnson, Forbes, and Gonzales, each allege they suffered unique harms. However, none of these Plaintiffs allege facts establishing any causal nexus between the alleged data breach and these incidents. To satisfy the second element of standing, Plaintiffs must "trace their concrete injuries to the data breach alleged and in a nonspeculative manner." *Jenkins.*, 2025 LX 120516, at *9. "[A]rticle III standing does at least require proof of a substantial likelihood that the defendant's

conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005). Thus, Courts have consistently "found causation missing when a plaintiff fails to explain how the [PII] disclosed in the data breach connects to the injury alleged." *Am. Data Serv.,* 2026 LX 199766, at *12; quoting *Jenkins.*, 2025 LX 120516, at *7.

In determining whether injuries stemming from a data breach are traceable to the incident, Courts consider both temporal proximity between the breach and the alleged injury, and whether the alleged fraud was carried out using the categories of data exposed during the breach. For example, District Courts in the Tenth Circuit have found injuries occurring 31 days to two months after a data breach were fairly traceable thereto. *See, e.g., Stern v. Acad. Mortg. Corp.,* No. 2:24-cv-00015-DBB-DAO, 2025 LX 482698, at *11 (D. Utah Oct. 8, 2025) (finding traceability element of standing met where, "[t]here is a clear temporal link between the Data Breach and the alleged fraud (31 days)"); *Hapka v. CareCentrix, Inc.*, No. 16-2372-CM, 2016 U.S. Dist. LEXIS 175346, at *10 (D. Kan. Dec. 19, 2016) (finding traceability element met where plaintiff alleged fraud occurred "less than two months after the data breach," using the specific information which was stolen in the data breach). However, where – as here – Plaintiffs have alleged they suffered injuries long after the alleged data breach occurred, they fail to establish traceability.

1. Plaintiff William Butsch II ("Butsch").

Plaintiff Butsch has alleged no facts from which this Court can infer that his information was among the data impacted in the Incident. Namely, he has not alleged he received a notice that his information was potentially impacted, or any other facts plausibly establishing that his PII/PHI was in Pinnacle's system at the time of the Incident. Therefore, Butsch has not and *cannot* establish standing to assert a claim stemming from an alleged data breach that – per the allegations set forth in the Complaint – did not impact his data.

Butsch also fails to allege a concrete injury which is fairly traceable to the Incident. He alleges his information appeared on the dark web "in the Summer 2025," fraudulent credit inquires appeared on his credit report in October 2025, and approximately $700 was fraudulently charged to his debt card in February 2025. (ECF No. 24., ¶¶ 180, 186-87). However, Butsch asserts no facts connecting these events to the Incident, which occurred in November 2024. Plaintiffs also do not allege that financial account or credit/debit information was among the data impacted in the Incident. Indeed, the timing and absence of any allegation linking the compromised data to the alleged fraud undermines any causal connection, as "courts (including this one) have found causation missing when a plaintiff fails to explain how the PII disclosed in the data breach connects to the injury alleged." *Jenkins.*, 2025 LX 120516, at *17. Where, as here, a plaintiff alleges they received "unauthorized charges on their bank accounts," they fail to establish traceability unless they have pled, "facts suggesting how the mere possession of their Social Security numbers and names would enable someone to make unauthorized charges on an existing account." *Id.* Plaintiff Butsch has failed to do so and has, therefore, failed to establish traceability.

2. Plaintiff Giovanna Williams ("Williams").

Plaintiff Williams alleges "[i]n or around December 2025, [she] discovered that she was locked out of her own SNAP account," and subsequently lost $3,000 in SNAP benefits "as a result of the SNAP account issues." (ECF No. 24. ¶ 204). Williams cannot establish traceability, as the alleged fraudulent activity on her SNAP account occurred nearly a year after the Data Breach. Additionally, Williams has not alleged that Pinnacle had any information pertaining to her SNAP account, nor that her login credentials were among the PHI/PII impacted. Accordingly, she cannot establish a causal nexus between the subject Incident and the theft of her SNAP benefits.

3. Plaintiff Louis Johnson III ("Johnson").

Plaintiff Johnson purportedly received "fraudulent transactions on his bank account." (ECF No. 24., ¶ 221). Johnson does not provide the dates of these purported transactions, nor does he allege that his bank information was included in the PHI/PII allegedly compromised in the breach. With these shortcomings, Johnson's allegations fail to establish that these fraudulent transactions are fairly traceable to the Incident.

4. Plaintiff Brenda Forbes ("Forbes").

Plaintiff Forbes alleges, "in or around October 2025 or November 2025," she received bills from an unfamiliar doctor's office, then called to dispute the bills. (ECF No. 24., ¶ 236). It does not appear that Forbes suffered any actual harm beyond the minor inconvenience of having to call the doctor's office to remedy the error. Moreover, these incidents occurred nearly a year after the incident, such that she has not plausibly alleged that they are traceable thereto.

5. Plaintiff Arthur Gonzales, Jr.

Plaintiff Gonzales alleges, in or around February and March 2025, he received unauthorized charges to his credit card. (ECF No. 24., ¶ 252). However, Per the Complaint, financial information was not among the types of Private Information compromised in Defendant's Data Breach. (*Id.* ¶ 34). Thus, Gonzales fails to plead facts sufficient to establish that the purported injury is traceable to the subject Incident.

**D. <u>Plaintiffs Have Failed to State a Cause of Action as to Each of the Five Causes of Action Asserted, and the Same Should be Dismissed Pursuant to FRCP 12(b)(6).</u>**

1. Plaintiffs' Negligence Claim Should be Dismissed, as Pinnacle Owed Plaintiffs No Duty.

To state a negligence claim, Plaintiffs must allege, "a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and causation." *Univ. of Denver v. Doe*, 2024 CO

27, 547 P.3d 1129, 1145 (Colo. 2024)(citation omitted). Critically, "[a] negligence claim will fail if it is rooted in circumstances for which the law imposes no duty of care upon the defendant." *Id.*

Plaintiffs are unable to establish the first element of their claim, as there is no common law duty to safeguard personal information under Colorado law. *Bellwether Community Credit Union v. Chipotle Mex. Grill, Inc*., 353 F. Supp. 3d 1070, 1084 (D. Colo. 2018) ("there is no basis in Colorado statutory or common law for imposing a duty of care related to data security"). Plaintiffs attempt to overcome this by alleging, in conclusory fashion, that Pinnacle had a "special relationship" with Plaintiffs and Class Members which gave rise to a duty. (ECF No. 24., ¶ 281). However, merely labeling the relationship a "special relationship" does not make it so. Plaintiffs plead no facts identifying the nature of the purported special relationship, explaining its source, or establishing why Colorado law should impose upon Pinnacle a duty arising from that relationship. In short, Plaintiffs cannot manufacture a duty simply by asserting its existence. This is particularly true, as Plaintiffs have set forth contradictory allegations, contending in one portion of the Complaint that they had *no* relationship with Pinnacle (aside from being patients of Pinnacle's clients), and alleging they have a *special* relationship in support of their negligence claim.

2. The Economic Loss Rule Bars Plaintiffs' Negligence and Negligence *Per Se* claims.

Even assuming, *arguendo*, that Plaintiffs could establish that Pinnacle owed them an independent duty of care—which they cannot—their negligence claim nevertheless fails under the economic loss doctrine. "In Colorado, a party suffering only economic loss from breach of a contractual duty may not assert a tort claim absent an independent duty of care." *Bellwether Cmty. Credit Union.*, 353 F. Supp. 3d 1070 at 1083. "Economic loss is generally defined as damages other than physical harm to persons or property." *Town of Alma v. AZCO Const., Inc*., 10 P.3d 1256, 1264 (Colo. 2000); *BRW, Inc. v. Dufficy & Sons, Inc*., 99 P.3d 66, 72 (Colo. 2004). An

exception to the economic loss rule applies where a plaintiff's negligence claim arises out of "an independent duty of care under tort law." *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017). In applying this exception, courts consider the following factors: "(1) whether the relief sought in negligence is the same as the contractual relief; (2) whether there is a recognized common law duty of care in negligence; and (3) whether the negligence duty differs in any way from the contractual duty." *BRW, Inc*., 99 P.3d 66 at 74.

Here, Plaintiffs do not allege physical damage to their persons or property, but seek only monetary compensation for alleged expenses, loss of value, mitigation costs, lost time, and other financial consequences arising from the alleged compromise of their PII, all of which are economic in nature. Moreover, Plaintiffs specifically allege Pinnacle owed them a duty arising out of Pinnacle's *contracts* with its clients. Plaintiffs have asserted claims for Pinnacle's alleged breach of those contracts in this action and seek the same relief – damages for purely economic harms. Moreover, the alleged duty Plaintiffs contend support their negligence claims (the duty to "safeguard[], secur[e], and protect[] [Plaintiffs'] Information,") is the same alleged duty supporting their breach of contract claims (the duty "to implement adequate data security measures to safeguard the Private Information of Plaintiffs and Class Members.") (ECF No. 24. ¶¶ 268, 307). This Court has dismissed negligence claims arising out of a data breach on these grounds where plaintiffs allege both negligence and breach of contract claims based on the same alleged duty and seeking the same relief. *See Bellwether Cmty. Credit Union.*, 353 F. Supp. 3d 1070 at 1084 ("there is no basis in Colorado statutory or common law for imposing a duty of care related to data security, [thus] Plaintiffs' claims are barred by the economic loss doctrine."). Courts have even done so where, as here, there are no "bilateral contracts between the merchant and plaintiffs," as "[t]he policies underlying the application of the economic loss rule to commercial parties are

unaffected by the absence of a one-to-one contract relationship." *SELCO Cmty. Credit Union.*, 267 F. Supp. 3d 1288 at 1296 (dismissing negligence and negligence *per se* claims based on the economic loss doctrine). Accordingly, Plaintiffs' negligence and negligence *per se* claims are subject to dismissal based on the economic loss rule.

3. Plaintiffs' Negligence *Per se* Claim Should be Dismissed, Because Pinnacle Owed no Duty Under HIPAA, and the FTC Act Does Not Prescribe Any Discrete Act.

"Negligence *per se* occurs when a defendant violates a statute adopted for the public's safety and the violation proximately causes a plaintiff's injury." *Scott v. Matlack, Inc*., 39 P.3d 1160, 1166 (Colo. 2002). "To recover, the plaintiff must also demonstrate that the statute was intended to protect against the type of injury she suffered and that she is a member of the group of persons the statute was intended to protect." *Id*. Moreover, "'the relevant statute needs to prescribe or proscribe some relatively discrete action,' such that the defendant's violation can be 'clearly established.'" *Doe.*, 2026 LX 204339, at *22 *(*quoting *Hendrickson v. Doyle*, 150 F. Supp. 3d 1233, 1239 (D. Colo. 2015)).

Plaintiffs' negligence *per se* claims are based on alleged violations of § 5 of the FTC Act and HIPPA. (ECF No. 24., ¶¶ 292-293). First, this Court has previously dismissed negligence *per se* claims based on the FTC Act, as the standards set forth therein are, "so broad, the Court cannot conclude that this portion of § 5 [of the FTC Act] prohibits any particular act." *Doe.*, 2026 LX 204339, at *22. Thus, "the FTC Act's general prohibition on 'unfair' commercial practices cannot support a claim for negligence per se under Colorado law." *Id.* Moreover, Plaintiffs' negligence *per se* claim based on alleged violations of HIPAA is also subject to dismissal, as they fail to allege Pinnacle is a covered entity under HIPAA, which governs health plans, health care clearinghouses, and health care providers. 42 U.S.C. § 1320d-2(d)(2)(A). Here, Plaintiffs allege they provided their

PII/PHI to their medical providers, who are covered entities. However, they have not sued those medical providers. Instead, they attempt to hold Pinnacle liable for failure to comply with a statute enacted to govern its medical provider-clients. Accordingly, because Plaintiffs have not alleged facts establishing Pinnacle's conduct was governed by HIPAA, they cannot establish a violation of the statute. Thus, their negligence *per se* claims based thereon should be dismissed.

4. Plaintiffs' Breach of Third-Party Beneficiary Contract Claim Should be Dismissed, as Plaintiffs Have Not Alleged They Were the Intended Beneficiaries of Any Contract.

"Generally, an individual who is not a party to a contract may not assert a claim for breach of that contract." *Sauter v. State Farm Fire & Cas. Co*., No. 2017CV033275, 2018 Colo. Dist. LEXIS 3124, 2018 WL 5732595, at *3 (Colo. Dist. Ct. July 2, 2018). "An exception to the general rule is the case of third-part[y] beneficiaries." *Id*. "A third-party beneficiary may enforce a contract only if the parties to that contract intended to confer a benefit on the third party when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to the third party." *Id*. (quoting *Everett v. Dickinson & Co*., Inc., 929 P.2d 10, 12 (Colo. App. 1996)). "[T]he intent to benefit the non-party…must be apparent from the terms of the agreement, the surrounding circumstances, or both." *Id*. (quoting *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co*., 874 P.2d 1049, 1056 (Colo. 1994)). "To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language." *Copper Mountain Inc. v. Indus. Sys., Inc*., 208 P.3d 692, 697 (Colo. 2009).

Plaintiffs' third-party beneficiary theory rests on generalized allegations that Pinnacle has unspecified "contracts" with unidentified "clients" which supposedly required "data security measures" for the benefit of Plaintiffs as patients of Pinnacle's clients. (ECF No. 24., ¶¶ 306-307). These conclusory assertions do not provide the Court or Pinnacle with sufficient information to

determine whether Plaintiffs were the intended beneficiaries of any contracts, and what duties arise under those contracts. In essence, Plaintiffs have simply alleged that contracts *must exist*, and that they *must be* beneficiaries. Such barebones assertions are insufficient to state a claim.

5. Plaintiffs' Unjust Enrichment Claim Should be Dismissed, as Plaintiffs Conferred no Benefit on Defendant.

To state a claim for unjust enrichment, a plaintiff must allege "(1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008). Here, Plaintiffs have not alleged that they conferred any money or tangible benefit on Pinnacle. Instead, they contend they paid Pinnacle's clients for medical services, and that Pinnacle's clients then paid Pinnacle for medical coding and risk adjustment services. Plaintiffs further allege, Pinnacle was somehow unjustly enriched by the payments it received from its clients. (ECF No. 24., ¶¶ 306, 313-316). To the extent Plaintiffs contend they did not receive a benefit for the money they paid to their medical providers (Pinnacle's clients), such claims should be directed to those entities. To the extent Plaintiffs contend Pinnacle's clients did not receive the value for which they paid Pinnacle, Plaintiffs have no standing to raise claims on behalf of those third parties. Absent allegations that Plaintiffs provided something of value to Pinnacle for which they are entitled to restitution, Plaintiffs fail to state an unjust enrichment claim.

## IV. CONCLUSION

Based on the arguments and authorities set forth herein, Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: August 24, 2026.

By: *<u>/s/ James W. Davidson</u>*

James W. Davidson
**O'HAGAN MEYER LLC**
One East Wacker Drive
Suite 3400
Chicago, IL 60601
Tel: (312) 422-6100
jdavidson@ohaganmeyer.com

*Counsel for Defendant*

## CERTIFICATE OF CONFERRAL

The undersigned met and conferred with Plaintiffs' counsel before filing this Motion, in compliance with Civil Practice Standard 7.1B. However, the parties were unable to agree to the issues raised in the Motion and require the Court's intervention to resolve them.

*/s/ James W. Davidson*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide copies to all counsel of record.

*/s/ James W. Davidson*
James W. Davidson
O'Hagan Meyer LLC
One East Wacker Drive
Suite 3400
Chicago, IL 60601
PH: (312) 422-6100
jdavidson@ohaganmeyer.com