**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| DIANA RING, *et al.*, individually and on behalf of all others similarly situated,<br>Plaintiffs,<br>v.<br>PINNACLE HOLDINGS, LTD.,<br>Defendant. | **Case No.: 1:26-cv-01090-CNS-TPO** |

**STIPULATION AND ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS**

## I. PURPOSE AND DEFINITIONS

Plaintiffs and Defendant (collectively, the "***Parties***" and each individually, a "***Party***") enter into this stipulation (the "***Protocol***") concerning the production of hard copy documents and electronically stored information ("***ESI***") in connection with the instant action. This Protocol will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules for this Court, the Rules of Professional Conduct, and any other applicable orders and rules. Nothing in this Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as expressly provided herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

## II. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter, including with respect to proportionality of discovery, reasonable efforts to ensure discovery of important information, and early and prompt communication regarding discovery issues.

## III. ESI LIAISONS

The Parties will identify persons knowledgeable about and who are responsible for discussing ESI discovery with each other. The Parties may subsequently substitute such designated persons or identify additional persons knowledgeable about ESI. Such persons will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, harvesting/collection, search methodologies, and production of ESI in this matter. These persons will be available as needed to confer about ESI and to help resolve disputes without court intervention.

## IV. PRESERVATION

The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

(a) In general, the Parties agree that ESI created or received before January 1, 2021, is not generally subject to preservation and harvesting for all discovery purposes, but this Protocol does not relieve a Party of its obligations to preserve and harvest ESI created before January 1, 2021, if the Party is aware of ESI that is likely to contain relevant and discoverable

information and if an efficient method might be identified to harvest such ESI relating to certain issues in this case;

(b) The Parties will meet and confer and use best efforts to agree on data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and ESI from these sources will either not be preserved or be preserved but not searched, reviewed, or produced; and

(c) The Parties may identify additional data sources as a result of investigation and/or discovery that may or may not need to be searched or preserved pursuant to the foregoing. The Parties will meet and confer about preserving such ESI as any additional data sources are identified.

(d) The Parties acknowledge that they have an obligation to take reasonable steps to preserve potentially discoverable materials. The Parties acknowledge that the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) applies to the discovery process in this Litigation, including the identification of custodians, relevant subject matter, time periods for discovery, and other parameters. The Parties agree that preservation of potentially relevant materials will be reasonable and proportionate.

## V. SEARCH

The Parties agree to meet and confer and use their reasonable best efforts to reach agreement regarding the search methodology to be used, before such methodology is used, and which methodology shall, and shall not, be applied to each category of documents requested and/or category of potentially responsive documents. Where

potentially responsive ESI shall be searched using search terms, the Parties agree to propose search terms they intend to employ to search for certain relevant and responsive documents. In the first instance, the producing Party will propose search terms for the consideration of the receiving Party following discussion with custodians of the search terms most likely to capture responsive documents.

Agreement on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and responsive documents of which a Party is aware, regardless of whether the contain search terms or some other search methodology agreed to by the Parties or ordered by the Court. Discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the Parties' conferral, and search terms do not supplant discovery requests. To the extent a Party is aware of non-duplicative documents that are relevant, responsive, non-privileged, and reasonably accessible, such documents will be produced regardless of whether they contain search terms or some other search methodology agreed to by the Parties or ordered by the Court.

Proposed search terms or TAR methodologies will be subject to negotiation with and responsible input from the receiving Party. That negotiation process will include the exchange of qualitative and quantitative information regarding the methodology, including, but not limited to, production of search term hit reports, and associated testing and validation to be conducted after the methodology is implemented. Any Party that unilaterally applies search terms or any search methodology without consultation with the opposing Party does so at its own risk and may waive the right to later argue undue burden or lack of proportionality should new searches be required.

Nothing in this Protocol shall be construed as precluding a producing Party from performing a privilege review to determine if certain documents should be withheld.

The Parties further agree that each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

The Parties acknowledge that there may be subsequent instances where potential modification to a previously agreed upon ESI search protocol may be warranted. Should such an instance arise, the Parties agree to meet and confer about modifications to a search methodology. If a Party requests such a meet and confer, the Parties will meet and confer within seven days.

## VI. INACCESSIBLE DATA

The following types of data stores are presumed to be inaccessible, are not subject to discovery or search, and need not be preserved:

(a) Deleted, slack, fragmented, or unallocated data on hard drives, provided, however, that this Protocol is not intended to restrict otherwise permissible discovery of information about the deletion of ESI.

(b) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

(c) On-line access data such as temporary internet files, history, cache, cookies, and the like.

(d) Back-up data that is substantially duplicative of data that are more accessible elsewhere.

(e) Data remaining from systems no longer in use that is unintelligible on the systems in use.

(f) Electronic data (e.g. e-mail, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Google devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

(g) Files identified as zero bytes in size.

If a producing Party believes any potentially relevant documents are not reasonably accessible, the producing Party will provide sufficient information about the documents (and their custodial or non-custodial sources) to enable the Parties to meet and confer in good faith about whether such documents should be deemed not reasonably accessible.

## VII. CUSTODIANS

Within 45 days of the entry of this Order, the Parties shall identify those persons whose files are likely to contain documents relating to the subject matter of this litigation (each a "Custodian"), identifying the proposed Custodian's job title, a brief description of their role and an overview of the types of relevant documents likely to be in their possession, custody, or control (e.g. communications with claimants, training materials). Within 10 days of receipt of the aforementioned list of Custodians, the Parties shall meet and confer regarding proposed Custodians in a good faith attempt to come to an agreement. If, after a good faith attempt, the Parties are unable to come to an agreement regarding Custodians, they shall immediately pursue the dispute process set forth in

Section XII of this Protocol. The Parties retain the right, upon reviewing the initial production of Documents, and conducting other investigation and discovery, to request that files from additional Custodians be searched and meet and confer regarding such a request.

## VIII. PRODUCTION FORMATS

With the exception of spreadsheets, presentation files, multi-media files and other native files that cannot be converted to image files, the Parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped single-page 1-bit TIFF images with a DAT load file that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below.

Unless excepted below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing Party shall provide a higher quality TIFF image or the native or original file.

(a) Production Media. The Parties shall produce documents through electronic means, such as e-mail or file sharing methods (e.g., FTP) (collectively, “Production Media”), with explicit decryption instructions if needed. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel, PowerPoint, multi-media, or other files that cannot be understood reasonably unless displayed

in native format. The producing Party shall identify: (a) the producing Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

(b) Color. The Parties shall produce documents in color if the original of the produced document is in color. Color images should be produced as single page JPG 1 files at 300dpi with JPG compression and a high-quality setting as to not degrade the original image.

(c) Unique IDs. Images shall be produced using a unique file name that will be the Bates number of the first page of the imaged file (e.g., ABC000001.TIFF). The Bates number must appear on the face of the image and not obliterate, conceal, or interfere with any information from the source document. Native files shall be produced using a name that will bear the production number and any confidentiality designation as well as the original filename (e.g., ABC000002_Confidential_OriginalFilename .xls).

(d) Parent-Child Relationships. Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

(e) Redactions. If the Parties are redacting information from a page, any redactions shall be clearly indicated on the face of the document. If documents that the Parties have agreed to produce in native format need

to be redacted, the producing Party shall include the word "Redacted" on all redacted fields, cells, and pages.

(f) Confidentiality Designation. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

(g) Metadata Fields. The Parties shall provide the following system generated and metadata fields (the "Production Fields") to the extent the information is reasonably available: Custodian, Duplicate Custodian, File Path, Page Count, Native File Link, Text Path, Title, Email Subject, From, To, CC, BCC, Date/Time Created, Date/Time Sent, Date/Time Received, Date/Time Last Modified, Filename, Author, Date Modified, Hash Value (such as MD5 or SHA-1), File Size, File Type, File Extension, Redacted, Confidentiality, Bates Number Begin, Bates Number End, Attachment Names, Attachment Range, Attachment Begin, Attachment End (or the equivalent thereof), Group ID/Family ID, and Hidden Content. No Party has an obligation to create or manually code fields that are not automatically generated by the processing of ESI, that do not exist as part of the ESI's original metadata, or that would be unduly burdensome or costly to generate.

(h) Native Format. The producing Party shall produce spreadsheets (e.g., Excel), presentation files (e.g., PowerPoint), and any other materials not

readily convertible to TIFF format (e.g. three-dimensional design files) in native format. To the extent that they are produced in this action, audio, video, and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the .TIFF file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Exhibit A. For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively" (or substantially similar). Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line. No Party may request or seek to compel the production of ESI in native format on a wholesale basis. The receiving Party may, however, request that the producing Party produce in native format ESI that is difficult to read in an imaged format. Upon request from the receiving Party that any files be produced in native format (identified by Bates number), the Parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied. The Parties agree to meet and confer regarding a protocol for use of native files at depositions, hearings, or trial.

(i) Text Files. Where possible, a document-level text file shall be provided in addition to the image files (TIFFs). Each text file will be named using its

corresponding beginning bates number (e.g., ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character recognition ("OCR") shall be used for all scanned, hard copy documents with redactions.

(j) Physical/Hard Copy Documents. Nothing herein shall relieve the Parties of any obligations they may have to search for responsive Documents in hard copy form. The Parties shall produce documents that exist solely in physical hard-copy format following this ESI Stipulation. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The documents should be logically unitized using reasonable best efforts. The ".tiff' files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. The Parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

(k) Databases and Other Structured Data. The Parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database management system (e.g., Oracle, SQL server, DB2), including the types of information stored in the database(s), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving Party will need any information in native form in order

to ensure that any information produced is reasonably usable by the receiving Party and that its production does not impose an undue burden. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, or Microsoft Excel format, along with a database dictionary. The requesting Party may make reasonable requests to meet and confer for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

(l) Duplicates. The producing Party may use software to identify duplicate documents that are in files of individual or multiple Production Custodians. To the extent there are duplicate documents, the producing Party need only produce a single copy of a responsive document, unless the requesting party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. No document that is the parent or an attachment of a produced document may otherwise be withheld as a duplicate. De-duplication should be done across the entire collection (i.e., global level) and the CUSTODIAN and FILEPATH fields should list each custodian and file path, respectively, separated by a semicolon. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing Party

should provide an overlay file along with or within a reasonable time after each production.

(m) Email Threading. Email threads are email communications that contain prior-in-time or lesser-included emails that also may exist separately in the party's electronic files. A most inclusive email thread is one that contains all the prior-in-time or lesser-included emails, including attachments and identical senders and recipients, for that branch of the email thread. The producing Party may remove from production the wholly-included, prior-in-time, or lesser-included emails, provided that none of the earlier emails in the chain contained non-identical attachments, senders, or recipients, and the email chain does not exclude any email conversations that split off from the primary thread. Following production of most inclusive email threads, a receiving Party may make reasonable requests for metadata associated with individual prior-in-time or lesser-included emails within specifically identified most inclusive email threads. The producing Party shall respond reasonably to such requests and produce the requested metadata within seven days.

(n) Hyperlinks. Documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will be produced to the extent such hyperlinked documents exist and are in the possession, custody, and control of the producing party. To the extent possible, such files should be produced with metadata preserving the parent-child relationship or some other form of cross-reference to the parent document

from which they are linked. If responsive Documents contain voluminous non-responsive hyperlinks that pose an unreasonable burden to collect and produce, the Parties agree to meet and confer on a document-by-document basis. This paragraph does not apply to internet hyperlinks to publicly available webpages, which need not be produced as attachments.

## IX. PRIVILEGE LOG

The production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

(a) The producing Party shall also provide a privilege log in compliance with Federal Rule of Civil Procedure 26(b)(5), containing the document type, date, to/from/cc/bcc fields, basis for the privilege claim, and document description, to the extent available, unless otherwise agreed in writing or pursuant to a court order. The producing Party will produce privilege logs in spreadsheet or .csv format. A producing Party will produce a privilege log within 15 days of the date of production in which the document or ESI was withheld on privilege grounds, unless the Parties confer in good faith and agree to a different date for production of a privilege log.

(b) To reduce burden and costs, a Party need include only one entry on the privilege log to identify withheld emails that constitute an uninterrupted dialogue between or among individuals, provided all participants (i.e.,

persons, addresses, or aliases on the to/from/cc/bcc lines) on any part of the email are identified.

(c) Redacted documents need not be logged on a privilege log if the reason for the redaction and any other information that would otherwise appear on a log is noted on the face of the document, and the bibliographic information (to, from, subject, etc.) is not redacted.

(d) Communications involving a Party's outside counsel beginning on November 25, 2024 (including all attorneys of record and associated attorneys, staff, or other personnel within the same law firms as the attorneys of record) need not be placed on a privilege log.

(e) Communications involving a Party's in-house counsel beginning on February 27, 2026 (including all attorneys of record and associated attorneys, staff, or other personnel within the same law firms as the attorneys of record) need not be placed on a privilege log.

(f) Work Product created at any time by the Parties' respective outside counsel related to this lawsuit need not be placed on a privilege log.

## X. PRESUMPTION OF AUTHENTICITY

To reduce the number of requests for admission, this Protocol establishes a rebuttable presumption that documents produced by the Parties are authentic, if said documents were either created or authored by the producing Party, or any of its employees, agents, or contractors, so long as the agent or contractors' work was performed in connection with a project or assignment from the producing Party. No further evidence to establish authenticity need be provided.

## XI. NON-PARTY PRODUCTION

(a) A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and ask that the non-party produce Documents in accordance with the specifications set forth herein. The Parties understand that non-parties are not required to comply with this Protocol.

(b) The Issuing Party is responsible for producing to all other Parties any documents obtained pursuant to a subpoena to any non-party. To the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other Parties within 14 days of the non-party's production to the Issuing Party.

(c) Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or any non-party to object to a subpoena.

## XII. DISPUTE PROCESS

For any dispute arising under this Protocol, including but not limited to disputes related to proposed search terms and custodians, the Parties shall meet and confer in good faith prior to seeking judicial relief and otherwise follow the Court's discovery dispute and motion procedures.

## XIII. MODIFICATION

This Protocol may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD:**

DATED: August 31, 2026

By: _/s/ Jeff Ostrow_
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
1 West Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
Tel: (954)332-4200
ostrow@kolawyers.com

Leanna A. Loginov
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave, Suite 705
Miami, FL 33132
Tel.: (305) 479-2299
lloginov@shamisgentile.com

John J. Nelson
**MILBERG, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Tel.: (858) 209-6941
jnelson@milberg.com

*Interim Co-Lead Class Counsel*

By: _/s/ James W. Davidson_
James W. Davidson
Lea McBryde
**O'HAGAN MEYER LLC**
One East Wacker Drive
Suite 3400
Chicago, IL 60601
Tel: (312) 422-6100
jdavidson@ohaganmeyer.com

*Counsel for Defendant*

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

Dated: September 4, 2026

Timothy P. O'Hara
United States Magistrate Judge